DAYTON BAR ASSOCIATION *v.* KORTE ET AL.

[Cite as *Dayton Bar Assn. v. Korte,*
111 Ohio St.3d 273, 2006-Ohio-5705.]

(No. 2006–0812—Submitted June 7, 2006—Decided November 15, 2006.)

---

**Per Curiam.**

{¶ 1} Respondent David C. Korte of Dayton, Ohio, Attorney Registration No. 0019382, was admitted to the practice of law in Ohio in 1980. Respondent Michelle D. Bach of Dayton, Ohio, Attorney Registration No. 0065313, was admitted to the practice of law in Ohio in 1995.

{¶ 2} On October 12, 2004, relator, Dayton Bar Association, charged each respondent with three violations of the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' comprehensive stipulations, and made findings of misconduct and a recommendation, which the board adopted.

### Procedural Background

{¶ 3} Relator's complaint alleged that respondents had failed to provide medical reports as required while defending an employer against a workers' compensation claim. The complaint charged that respondents had thereby violated DR 7–102(A)(3) (prohibiting a lawyer from concealing or knowingly failing to disclose that which a lawyer is required by law to reveal), 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1–102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 4} The parties stipulated that respondents had violated DR 1–102(A)(6) (engaging in conduct adversely reflecting on a lawyer's fitness to practice law), which was not charged in the complaint, and that a public reprimand was the appropriate sanction. The parties also jointly recommended that the panel dismiss the claims as to the alleged violations of DR 7–102(A)(3), 1–102(A)(4), and 1–102(A)(5). In addition to the stipulated facts and misconduct, the evidence presented included respondents' testimony and the testimony of character witnesses.

### Misconduct

{¶ 5} Respondents are now certified specialists in workers' compensation law. At all times relevant to this case, both respondents were employed by a Dayton law firm, practicing workers' compensation law, usually in defense of employers. In June 1999, respondents agreed to defend the Springboro School District ("Springboro") against a teacher's workers' compensation claim. Respondent Korte acted as lead counsel, and respondent Bach assisted him as co-counsel.

{¶ 6} The teacher originally filed a claim for neck and shoulder sprain, alleging a workplace injury and requesting compensation. She later filed a motion with the Bureau of Workers' Compensation seeking the additional allowance of a claim for "generalized anxiety disorder." In respondents' experience, the motion was atypical because it did not precisely specify the claimed condition, stating instead that the request was "not necessarily limited to this specific [generalized anxiety disorder] diagnosis" and that "the claimant would be willing to accept whatever psychological/psychiatric diagnosis is found upon evaluation by the Bureau's independent medical examiner."

{¶ 7} On Springboro's behalf, respondent Korte retained psychologist Michael T. Farrell as the employer's expert. In a July 2, 1999 letter, respondent Bach

asked Dr. Farrell to examine the teacher and determine whether she was suffering from either generalized anxiety disorder or any other psychological condition. Respondent Bach framed her request based on the open-ended language of the motion seeking allowance of the additional claim.

{¶ 8} Dr. Farrell conducted his examination and, on August 2, 1999, reported his findings. He determined that the teacher did not suffer from generalized anxiety disorder or a major depressive disorder, as the treating psychologist and the bureau's medical examiner had diagnosed. Dr. Farrell went on to advise that, in his opinion, the teacher met the criteria for an "adjustment disorder with mixed emotional features," a less debilitating but potentially compensable condition, and that this diagnosis was work-related but not disabling.

{¶ 9} Without remembering the atypical language in the teacher's motion or the July 2, 1999 letter to Dr. Farrell, respondent Korte concluded that Dr. Farrell's report contained an inappropriate, gratuitous diagnosis of an adjustment disorder and that the doctor should be asked if he could comfortably confine his report to the conditions involved in the claim—generalized anxiety disorder and major depressive disorder. When he told his co-counsel to contact the doctor, respondent Bach realized that she had asked Dr. Farrell for his own diagnosis; however, she did not speak up out of deference to her co-counsel's expertise.

{¶ 10} Respondent Bach called Dr. Farrell to ask him to revise his report and limit his opinion to the claimed conditions of generalized anxiety disorder and major depressive disorder. On August 16, 1999, Dr. Farrell issued his revised report, discussing only the two conditions outlined in the claim. Dr. Farrell neglected, however, to discuss the extent to which the two conditions were disabling. As a result, respondents asked Dr. Farrell for a second revised report that also discussed his opinion regarding disability.

{¶ 11} Under Ohio Adm.Code. 4123-3-09(C)(5)(a), an employer who arranges for a claimant's medical examination must submit a copy of the examination report to the bureau or the Industrial Commission and to the claimant's representative "upon the employer's receipt of the report from the doctor."

{¶ 12} Respondents, however, did not provide the August 2, 1999 or the August 16, 1999 medical reports to either opposing counsel or the bureau. Respondent Korte, who knew at the time that Dr. Farrell had issued two revisions of his report, apparently considered the first two reports preliminary, inapposite drafts that were not subject to the disclosure requirement. Looking back, respondent Korte frankly conceded his mistake and took complete responsibility for it. Respondent Bach was similarly contrite, blaming herself for not reminding her co-counsel of the unusually open-ended language in the teacher's request for an additional allowance or explaining how Dr. Farrell came to offer his own diagnosis.

{¶ 13} On August 25, 1999, Dr. Farrell issued a third report that was identical to the August 16 report other than that it omitted a reference irrelevant to this case and included his opinion that no psychological impediment prevented the teacher's return to work. Respondents submitted a copy of the August 25 report to opposing counsel, the bureau, and the commission.

{¶ 14} In November 1999, the bureau allowed the teacher's additional claim for "generalized anxiety disorder" and "depressive psychosis." On Springboro's appeal, a commission district hearing officer affirmed the allowance. On March 21, 2000, Dr. Farrell supplemented his report, emphatically concluding that the teacher had neither of the allowed conditions and was malingering. Respondents furnished this report to opposing counsel, the bureau, and the commission.

{¶ 15} On further appeal, a commission staff hearing officer disallowed the teacher's claim based in part on Dr. Farrell's supplemented report. The teacher challenged the denial and filed a complaint in common pleas court to overturn the commission's decision. By the time the teacher's claim was to be tried, it had exceeded Springboro's experience and no longer affected the school system's premium rates. Thus, representatives of the Ohio Attorney General's Office took over the representation for respondents as defenders of the state Workers' Compensation Fund.

{¶ 16} Respondents' decision to withhold the August 2 and August 16 reports eventually came to light during a September 2002 deposition of Dr. Farrell. Dr. Farrell, who had been unable to locate his actual file to produce at the deposition, retrieved the records from his computer. His virtual file contained the undisclosed reports, which he then provided for review by the teacher and her counsel.[1]

{¶ 17} Based on the parties' stipulations, the board found that respondents had failed to disclose that which each was required to reveal, a violation of DR 7–102(A)(3), and had thereby committed an act prejudicial to the administration of justice, a violation of DR 1–102(A)(5). Because respondents had acted in accordance with their best, albeit misguided, professional judgment, however, the board rejected the stipulation that they had violated DR 1–102(A)(6). The board also dismissed the charge that respondents had acted dishonestly or deceitfully in violation of DR 1–102(A)(4), although some correspondence between respondents at first suggested that they had.

## Recommended Sanction

{¶ 18} In recommending a sanction for respondent's misconduct, the panel and board weighed the aggravating and mitigating factors of respondents' case. See

---

1. Dr. Farrell's deposition testimony, in which he changed his diagnosis and agreed that the teacher suffered from an employment–induced generalized anxiety disorder and major depressive disorder, apparently led to an agreed judgment entry for the allowance of these conditions.

Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 19} Adopting the panel's report, the board found no evidence of aggravating factors. In contrast, the board found a number of circumstances weighing in favor of a relatively lenient sanction. Respondents had no prior disciplinary record and did not act out of self-interest or dishonesty, mitigating factors under BCGD Proc.Reg. 10(B)(2)(a) and (b). Respondents were also completely cooperative in the disciplinary proceedings, with full and free disclosure of the underlying facts. BCGD Proc.Reg. 10(B)(2)(d).

{¶ 20} Moreover, respondents impressed the panel and board as being "bright, professional and hard-working attorneys who are well respected in their community." Respondents "readily acknowledged the impropriety of their actions and expressed * * * heartfelt, genuine remorse for the erroneous decisions each of them made." The board further found mitigating the fact that the atypical language in the teacher's motion for an additional allowance caused understandable confusion and miscommunication between respondents:

{¶ 21} "[T]he circumstances of the workers' compensation case leading to the disciplinary infractions were unusual in the experience of Respondents. While Respondents had extensive workers' compensation experience, they had not handled cases where a motion seeking the allowance of a claim was phrased as this one had been, in that the motion included that language that '[t]his request is not necessarily limited to this specific diagnosis and the claimant would be willing to accept whatever psychological/psychiatric diagnosis is found upon evaluation by the Bureau's independent medical examiner.' Respondents credibly testified that it had never been their prior practice to request that an examining doctor come up with a diagnosis on his own but, rather, that it was their normal experience that an examining doctor would review a case only for specifically claimed conditions."

{¶ 22} Based on the parties' stipulations of fact and misconduct and their suggested sanction, the panel and board recommended that respondents be publicly reprimanded.

### Review

{¶ 23} We agree with the board's findings of misconduct and the recommendation. Respondents are therefore publicly reprimanded for having violated DR 1–102(A)(5) and 7–102(A)(3). Costs are taxed to respondents.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

Hollencamp & Hollencamp and Arthur R. Hollencamp, for relator.

Kegler, Brown, Hill & Ritter, Geoffrey Stern, and Christopher J. Weber, for respondents.